**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Dr. Genick Bar-Meir,

Plaintiff,

v.

North American Die Cast Association MN Chapter 16 (NADCA Chapter 16), Henry Bakemeyer, and Larry Winkler,

Defendants.

Civil No. 00-2772 RHK/AJB
**MEMORANDUM OPINION AND ORDER**

---

Dr. Genick Bar-Meir, pro se, Minneapolis, Minnesota, for Plaintiff.

Debra J. Stanek, Sidley, Austin, Brown & Wood, Chicago, Illinois, and Dean C. Eyler, Dorsey & Whitney, L.L.P., Minneapolis, Minnesota, for Defendants.

---

## Introduction

Plaintiff Dr. Genick Bar-Meir commenced this copyright infringement action against Defendants North American Die Cast Association MN Chapter 16 (NADCA Chapter 16) ("Chapter 16"), Larry Winkler, and Henry Bakemeyer, alleging that they have infringed his copyright on the book, Fundamentals of Die Casting Design. Before the Court are the parties' cross-motions for summary judgment. The Court took the motions under advisement on the papers in light of Bar-Meir's failure to appear at the



FILED DEC 20 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD DEC 20 2001
DEPUTY CLERK

hearing scheduled for November 27, 2001.[1] For the reasons set forth below, the Court will grant the Defendants' motion and will deny the Plaintiff's motion.

**Background**

Bar-Meir, a Minnesota resident, is a die casting researcher and educator who has written and distributed a book entitled Fundamentals of Die Casting Design, as well as additional material. (Rule 26(f) Joint Report at 1-2; Compl. ¶ 10; Bakemeyer Answer ¶ 10; Chapter 16 Answer ¶ 10; Winkler Answer ¶ 10.) Defendant Chapter 16 is a Minnesota not-for-profit corporation whose purposes include advancing, through research and education, the arts and sciences relating to the manufacturing and use of die casting. (Rule 26(f) Joint Report at 2.) Chapter 16 is the local chapter for the North American Die Casting Association ("NADCA"), an international technical and trade association for the die casting industry. NADCA sponsors, inter alia, training and education courses, including a "$pQ^2$" course.[2] (Twarog Decl. ¶¶ 3, 5.)

NADCA has hired Defendant Bakemeyer, a Wisconsin resident, to serve as an

---

[1] The Plaintiff made no written request to the Court to change the date or time at which the Court scheduled the hearing on Defendants' summary judgment motion. The only written indication that Plaintiff had a problem with the hearing date is found in a footnote in his memorandum in opposition to the Defendants' motion for summary judgment. (Mem. Opp'n Defs.' Mot. for Summ. J. at 2 n.1.)

[2] The term "$pQ^2$" refers to "a diagram developed in the 1970s . . . as a tool for diecasters. P represents pressure and Q represents the rate of flow. . . . The diagram is used to measure and optimize the performance of a die casting machine and the die." (Twarog Decl. ¶ 5.)

instructor for some of the organization's courses. (Id. ¶¶ 3, 5, and 6.) Defendant Winkler, a Minnesota resident, is an engineering manager and Chapter 16's Vice Chairman for Education. (Id. ¶¶ 3, 5; see also Compl. ¶ 6; Winkler Answer ¶ 6.)

Bar-Meir's complaint centers on NADCA's "pQ$^2$" course. NADCA describes the course as follows:

> This one-day course ties the machine power available with the die and process parameters. It provides the die caster knowledge of the fill time and Bernoulli's equations and how [variations] in shot sleeve size affect the power of the machine. It reviews optimization of the die cast machine and process parameters required to produce high quality castings.

(Twarog Decl. Ex. A.)[3] Materials for the "pQ$^2$" course consist of an outline, instructor guidelines, and handouts, all of which are created for the NADCA by others. (Twarog Decl. ¶ 7.) The Defendants were not involved in preparing those materials. (Id.) The NADCA displayed the description for the "pQ$^2$" course on its website and in other print materials it distributed. (Id. ¶ 8.)

Late last year, Chapter 16 had intended to offer a "pQ$^2$" course in Minnesota on December 15, 2000; NADCA had arranged for Bakemeyer to teach it. (Id. ¶ 6.) Prior to December 15, however, Winkler learned that Bar-Meir had asserted claims of copyright infringement against the NADCA.[4] Upon learning this information, Chapter 16 cancelled

---

[3] NADCA displays and distributes the course description on its website and in other print materials created by NADCA. (Twarog Decl. ¶ 8.)

[4] Those claims were asserted in a separate lawsuit commenced in this Court.

the "$pQ^2$" course in Minnesota. Because the "$pQ^2$" course was cancelled, NADCA did not provide course materials to any of the Defendants. (Twarog Decl. ¶ 6.)

## Analysis

### I. Standard of Decision

Summary judgment is proper if, viewing the record in the light most favorable to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the burden of showing that the material facts in the case are undisputed. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Mems v. City of St. Paul, Dep't of Fire & Safety Servs., 224 F.3d 735, 738 (8th Cir. 2000). The nonmoving party may not rest on mere allegations or denials, but rather must demonstrate the existence of specific facts that create a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995). Any fact alleged to be in dispute must be "outcome determinative under prevailing law"; that is, it must be material to an essential element of the specific theory of recovery at issue. See Dancy v. Hyster Co., 127 F.3d 649, 652 (8th Cir. 1997); Get Away Club, Inc. v. Coleman, 969 F.2d 664, 666 (8th Cir. 1992).

The court does not weigh facts or evaluate the credibility of affidavits and other evidence on a motion for summary judgment. See Liberty Lobby, 477 U.S. at 249. Rather, the court must view the evidence, and the inferences which may be reasonably

drawn from it, in the light most favorable to the nonmoving party. See Graves v. Arkansas Dep't of Fin. & Admin., 229 F.3d 721, 723 (8th Cir. 2000); Calvit v. Minneapolis Pub. Schs., 122 F.3d 1112, 1116 (8th Cir. 1997). Summary judgment is to be granted only where the evidence is such that no reasonable jury could return a verdict for the nonmoving party. See Liberty Lobby, 477 U.S. at 250.

## II. Copyright Infringement

Bar-Meir contends that the defendants have violated his copyright in his book by advertising, selling and/or distributing material that is derivative of his book. Copyright infringement occurs when any of the rights granted under § 106 of the Copyright Act have been violated. See 17 U.S.C. § 501. Section 106 provides in relevant part that

> the owner of copyright . . . has the exclusive rights to do and to authorize any of the following:
>
> (1) to reproduce the copyrighted work in copies or phonorecords;
>
> (2) to prepare derivative works based upon the copyrighted work;
>
> (3) to distribute copies . . . of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;
>
> * * * * *
>
> (5) in the case of literary . . . works, . . . to display the copyrighted work publicly . . . .

Id. § 106. Thus, to establish a claim of copyright infringement, Bar-Meir must prove (1) that he is the owner of a valid copyright, and (2) that there has been a violation of his

exclusive rights by, for example, the unauthorized reproduction and distribution of the copyrighted work. Pinkham v. Sara Lee Corp., 983 F.2d 824, 830 (8th Cir. 1992).

Defendants argue they are entitled to summary judgment on Bar-Meir's Complaint because the materials generated by NADCA, which Bar-Meir complains the Defendants sold, were not copied from and are not substantially similar to the ideas or expressions thereof found in Bar-Meir's book. Defendants further argue that they have not caused the materials for the "$pQ^2$" course to be created, reproduced, publicly distributed, publicly displayed, or publicly performed. The Court begins with Bar-Meir's allegations of the Defendants' unauthorized copying of his book.

**A. Copying**

To establish copyright infringement based upon unauthorized copying, the Plaintiff must prove (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. Feist Publications, Inc. v. Rural Telephone Service Co., 499 U.S. 340, 361 (1991); United Tel. Co. of Mo. v. Johnson Pub. Co., Inc., 855 F.2d 604, 607 (8th Cir. 1987) (stating that plaintiff must prove (1) ownership of the copyright, and (2) 'copying' of protectible expression by the defendant); see also Janel Russell Designs, Inc., v. Mendelson & Assocs., 114 F. Supp. 2d 856, 863 (D. Minn. 2000). Copying, the second element, may be established either by direct evidence of copying or circumstantial evidence giving rise to an inference of copying. To give rise to an inference of copying, the plaintiff must show that the defendant had access to the copyrighted work and there is

substantial similarity between the two works in terms of the ideas expressed therein.

Hartman v. Hallmark Cards, Inc., 833 F.2d 117, 120 (8th Cir. 1987).

> A determination of substantial similarity involves a two-step analysis. There must be substantial similarity not only of the general ideas but of the expressions of those ideas as well. First, similarity of ideas is analyzed extrinsically, focusing on objective similarities in the details of the works. Second, if there is substantial similarity in ideas, similarity of expression is evaluated using an intrinsic test depending on the response of the ordinary, reasonable person to the forms of expression.

Moore v. Columbia Pictures Indus., Inc., 972 F.2d 939, 945 (8th Cir. 1992)

For purposes of the pending summary judgment motion, the Defendants are willing to concede that Bar-Meir owns a valid copyright in Fundamentals of Die Casting Design, and that they had access to that work. For his part, Bar-Meir admits that the Defendants have not directly copied from the book in question. (Mem. Opp'n to Defs.' Mot. for Summ. J. at 7.) Therefore, to establish unauthorized copying, Bar-Meir must present facts sufficient to support an inference of copying.

Defendants argue that no reasonable jury could infer that copying had occurred because the ideas in the respective works are not objectively similar, and the expression of the ideas in question would not be considered substantially similar in the eyes of an ordinary, reasonable person. The following table sets side-by-side the passages that Bar-Meir has identified as being "substantially similar."

| **Plaintiff's Book** | **NADCA Course Description** |
|---|---|
| The power, we can extract from a machine, depend on the plunger velocity and other parameters.<br><br>Fundamentals of Die Casting Design at 88 | It provides the die caster knowledge of the fill time and Bernoulli's equations and how [variations] in shot sleeve size affect the power of the machine.<br><br>NADCA "$pQ^2$" course description |
| The effects of various important parameters was discussed.<br><br>Fundamentals of Die Casting Design at 91 | It reviews optimization of the die cast machine and process parameters required to produce high quality castings.<br><br>NADCA "$pQ^2$" course description |

The parties agree that the chapter in Bar-Meir's book addressing "$pQ^2$" describes the current state of knowledge concerning the subject, presents a "common model" of the "$pQ^2$" diagram, and then critiques and questions its validity. As Bar-Meir himself describes it, his book "goes to great length [to] describe why the commonly believed theories are totally erroneous." (Pl.'s Mem. Opp'n to Defs.' Mot. for Summ. J. at 5.) The description of NADCA's "$pQ^2$" course, by contrast, describes what the course is intended to cover.[5] The scientific principle, $pQ^2$, which graphically represents the relationship between pressure and the rate of flow, existed prior to Bar-Meir's book and cannot be copyrighted.

---

[5] Bar-Meir claims that there is some similarity between his book and the NADCA course description because he was the first to discuss "the two most important aspect[s] of the $pQ^2$ diagram" and the only one to discuss in detail "the effect of the plunger diameter." As discussed in the text, supra, such ideas are not, in themselves, copyrightable. 17 U.S.C. § 102.

> In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work.

17 U.S.C. § 102(b); see also Applied Innovations v. Regents of the Univ. of Minn., 876 F.2d 626, 636 (8th Cir. 1989). The Court determines, from the record on summary judgment, that there is no genuine issue of material fact as to whether the ideas expressed in the two works are objectively similar. They are not.

Assuming for the sake of argument, however, that the ideas in the respective works could be found to be similar, there is no evidence from which a reasonable jury could find that the expressions of those ideas are substantially similar. The Court finds wholly without merit Bar-Meir's assertion that a reasonable person would view the language from the NADCA course description as a "rewrite" of his text "in a similar fashion of the original." Neither of the sections of text set forth in the table above could reasonably be considered a verbatim reproduction or very close paraphrasing. The Court concludes that Bar-Meir has failed to come forward with evidence to establish an essential element of his claim of unauthorized copying. Accordingly, the Court will grant summary judgment in favor of the Defendants on the issue of copying.

**B. Preparation of Work Derived From the Copyrighted Work**

Bar-Meir also argued that the passages from the course description are "derived from" the discussion in the plaintiff's book about the "$pQ^2$" diagram. Specifically, Bar-

Meir alleges that NADCA's sole purpose in creating the course description was to make it appear that the course was "compatible" with Bar-Meir's work in the field. (Pl.'s Reply Brief at 6.) The Copyright Act defines a "derivative work" to mean

> a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted. A work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship, is a "derivative work."

17 U.S.C. § 101. For a derivative work to infringe a copyright, "'the infringing work must incorporate in some form a portion of the copyrighted work.' Litchfield v. Spielberg, 736 F.2d 1352, 1357 (9th Cir.1984), cert. denied, 470 U.S. 1052 (1985). In addition, the infringing work must be substantially similar to the copyrighted work. Id." Vault Corp. v. Quaid Software Ltd., 847 F.2d 255, 267 (5th Cir. 1988).

The Court finds no merit in Bar-Meir's assertion that "the derived work [i.e., the course description] has life only in light of the Bar-Meir work and because of the Bar-Meir work." (Pl.'s Reply Brief at 6.) As the table above comparing Bar-Meir's book to the NADCA course description demonstrates, it is undisputed that the course description -- as the alleged "derivative work" – has not incorporated a portion of the book. Furthermore, even if a reasonable jury could find that some incorporation had taken place, there is no basis on which the jury could find that the course description is "substantially similar" to the book, for the reasons set forth above. Accordingly, the

Court will grant summary judgment on the issue of whether the course description is an unauthorized derivative work.

## C. Public Distribution or Display

Finally, the Defendants move for summary judgment on Bar-Meir's allegations that they publicly distributed copies of the NADCA course materials without authorization from him. (See Compl. ¶ 19.) The Court has reviewed the record and finds insufficient evidence to support such an allegation. It is undisputed that NADCA never sent materials for the "$pQ^2$" course to the Defendants because Chapter 16 cancelled the course. The Defendants therefore had no materials to distribute. As for the course description itself, the parent NADCA organization -- not any of the defendants -- was responsible for displaying and distributing the description. The Court concludes that summary judgment is appropriate on Bar-Meir's allegations of unauthorized public display or distribution.

## III. Defendants' Request for Costs

Defendants have requested an award of their costs pursuant to § 505 of the Copyright Act. Section 505 provides

> In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

17 U.S.C. § 505. The decision to award costs and attorneys' fees in a copyright action is

committed to the district court's discretion. Mary Ellen Enterps. v. Camex, Inc., 68 F.3d 1065, 1072 (8th Cir. 1995). "Among the factors a district court can consider in deciding whether to award attorneys' fees are 'frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" Id. (quoting Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 n.19 (1994))

Defendants argue that, because this lawsuit was frivolous and intended to harass them, they should recover their costs, including attorneys' fees. The Court, having considered the factual and legal bases of the case, finds the instant action to have been objectively unreasonable. The Court also appreciates the need to advance considerations of deterrence from the filing of further suits of this ilk. Therefore, the Court determines that an award of costs and attorneys' fees is appropriate. The Defendants shall submit an affidavit disclosing their costs and attorneys' fees as ordered below.

## IV. Defendants' Request to Have the Plaintiff Declared a Vexatious Litigant

In their reply brief, Defendants have asked the Court to find that Bar-Meir is a vexatious litigant and to require him to obtain leave of the Court before filing motions or additional complaints relating to the NADCA, its current or former affiliates, employees, and Board of Governors. In support of this request, Defendants cite a number of cases and 28 U.S.C. § 1651. Section 1651(a) provides that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their

respective jurisdictions and agreeable to the usages and principles of law." Section 1651 has been used to enjoin a plaintiff from engaging in repetitive and vexatious litigation concerning an issue. Generally, however, all persons are entitled to access to the courts, and litigiousness alone will not warrant an injunction prohibiting the filing of future lawsuits. See Abdul-Akbar v. Watson, 901 F.2d 329, 332 (3d Cir. 1990); In re Oliver, 682 F.2d 443, 446 (3d Cir. 1982); Pavilonis v. King, 626 F.2d 1075 (1st Cir.), cert. denied, 449 U.S. 829 (1980). Typically, orders enjoining future lawsuits are not necessary because the doctrines of claim and issue preclusion will suffice to protect defendants from repetitious lawsuits. Harrelson v. United States, 613 F.2d 114, 116 (5th Cir. 1980).

With respect to Bar-Meir, he has filed four consecutive suits against the NADCA and a number of defendants affiliated therewith, asserting a variety of legal claims that appear to arise out of his dissatisfaction with the NADCA. The Court concludes that, while Bar-Meir's conduct may certainly at this point be described as litigious, it does not rise to the level of being vexatious and harassing. The undersigned is not in a position to judge the merits of Bar-Meir's most recent lawsuit, in which he alleges that a member of the NADCA's Board of Governors has been spending considerable time discussing Bar-Meir with others in the industry in an effort to defame and diminish him. Based on the record presently before it, the Court declines to enter a writ against Bar-Meir.

**Conclusion**

Based on the foregoing, and all of the files, records and proceedings herein, **IT IS**

**ORDERED** that

1. Defendants' Motion for Summary Judgment (Doc. No. 36) is **GRANTED**;

2. Plaintiff's Motion for Summary Judgment (Doc. No. 40) is **DENIED**;

3. Plaintiff's Complaint is **DISMISSED WITH PREJUDICE**; and

4. Defendants are directed to file with the Court **in Saint Paul** and serve on Plaintiff by Monday, January 7, 2001, an affidavit setting forth the costs they seek to recover under section 505 of the Copyright Act.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: December 20, 2001

RICHARD H. KYLE
United States District Judge

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES:

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

C:\FORMS\APPEAL NO. CIV
Rev. August 11, 1995